## MILMAN LABUDA LAW GROUP PLLC
**3000 MARCUS AVENUE**
**SUITE 3W8**
**LAKE SUCCESS, NY 11042**

---

**TELEPHONE (516) 328-8899**
**FACSIMILE (516) 328-0082**

† Also admitted in New Jersey

Author: Joseph M. Labuda – Member †
Direct E-Mail Address: joe@mllaborlaw.com
Direct Dial: (516) 303-1380

February 6, 2015

Via ECF

Hon. P. Kevin Castel
Daniel Patrick Moynihan
United States Courthouse
500 Pearl St.
New York, NY 10007-1312

**Re:   Ramones v. MDDCAR-Chimichuri**
       **14-cv-02577 (PKC)**
       **MLLG File No: 118-14**

Dear Judge Castel:

This firm represents the Defendants in the above-referenced matter. This letter shall serve as Defendants' request for a pre-motion conference regarding their forthcoming motion for summary judgment and motion for sanctions based on spoliation of evidence.

### Summary Judgment

In the Amended Complaint, Plaintiffs assert claims for unpaid wages pursuant to the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL"), *inter alia*. Specifically, Abraham Calle ("Calle"), a Plaintiff added into the lawsuit through the filling of the Amended Complaint, asserts claims only for the period of 2008 to 2009, when he worked for Defendants. (See Amended Complaint, Dkt. # 11, ¶15). However, his sole federal claim under the FLSA is time-barred and must be dismissed.

The statute of limitations for a FLSA claim is two (2) years or three (3) years for a willful violation. 29 U.S.C. § 255(a). Here, Plaintiffs filed the Amended Complaint on May 5, 2014, the same day that Calle filed his consent to sue form. Applying a three (3) year statute of limitations, Calle's claims are limited to the time period of May 5, 2011 to May 5, 2014. Calle's claims are time-barred as he "worked for Defendants as a server from 2008 to 2009," which clearly falls outside of the FLSA statute of limitations. (See Amended Complaint, Dkt. #11, ¶15). In fact, Plaintiffs' counsel has represented that they will not pursue any FLSA claim for Calle.

However, astonishingly Plaintiffs' counsel has refused to withdraw Calle's NYLL claims despite the fact that the Court has no supplemental jurisdiction over Calle's NYLL claims. A district court that has jurisdiction over federal claims has discretion to exercise supplemental jurisdiction over state-law claims that otherwise could not properly be brought in federal court. Yet, when there is no federal claim, courts routinely dismiss state claims. See 28 U.S.C. § 1367; Kolari v. N.Y.-Presbyterian Hosp., 455 F.3d 118, 122 (2d. Cir. 2006) ("[A] district court's discretion is triggered under § 1367(c)(3)). "In most circumstances, a district court should decline supplemental jurisdiction if all federal claims have been dismissed ...". Lerner v. Fleet Bank, N.A., 318 F.3d 113, 130 (2d Cir. 2003); see also, Carnegie-Mellon University v. Cohill, 484 U.S. 343, 350 n.7, (1988) ("in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims"); Cave v. E. Meadow Union Free Sch. Dist., 514 F.3d 240, 250 (2d Cir. 2008) ("We have already found that the district court lacks subject matter jurisdiction over appellants' federal claims. It would thus be clearly inappropriate for the district court to retain jurisdiction over the state law claims when there is no basis for supplemental jurisdiction."); Karmel v. Claiborne, Inc., 2002 U.S. Dist. LEXIS 12842, 2002 WL 1561126, at *4 (S.D.N.Y. July 15, 2002) ("Where a court is reluctant to exercise supplemental jurisdiction because of one of the reasons put forth by § 1367(c), or when the interests of judicial economy, convenience, comity and fairness to litigants are not violated by refusing to entertain matters of state law, it should decline supplemental jurisdiction and allow the plaintiff to decide whether or not to pursue the matter in state court.").

Here, the above-referenced factors weigh in favor of dismissal of Calle's claims. First, there is no judicial economy in hearing only New York claims, which Calle is free to bring before a competent court in New York State. Second, it is more convenient for Calle to bring the claims in the county in which he lives. Third, it will provide fairness and comity for the New York State court system to hear these claims since they are familiar with the laws at issue in the instant matter. Accordingly, the Court should not exercise supplemental jurisdiction over Calle's NYLL claims.

## Spoliation of Evidence

In addition, Plaintiffs have engaged in egregious and prejudicial conduct against Defendants. Specifically, Plaintiffs stole and altered Defendants' tip books which show Plaintiffs' hours worked as well as who received tips and how much. Defendants request that the Court sanction Plaintiffs by dismissing their claims, instructing the jury to draw a negative inference against Plaintiffs based on their conduct, and such other relief as this Court deems just and proper.

"Although a district court has broad discretion in crafting a proper sanction for spoliation, we have explained that the applicable sanction should be molded to serve the prophylactic, punitive, and remedial rationales underlying the spoliation doctrine." West v. Goodyear Tire & Rubber Co., 167 F.3d 776, 779 (2d Cir. 1999). In particular we have recognized that a sanction should "(1) deter parties from engaging in spoliation; (2) place the risk of an erroneous judgment on the party who wrongfully created the risk; and (3) restore the prejudiced party to the same

position he would have been in absent the wrongful destruction of evidence by the opposing party." Id. (internal quotation marks omitted). "Dismissal is appropriate if there is a showing of willfulness, bad faith, or fault on the part of the sanctioned party." Id.

Moreover, since dismissal is a "drastic remedy, it should be imposed only in extreme circumstances, usually after consideration of alternative, less drastic sanctions." West, 167 F.3d at 779 (internal quotation marks omitted). However, the Second Circuit has held that since excluding documents sought in discovery would only serve to benefit the sanctioned plaintiff and the documents were central to defendant's ability to challenge plaintiff's claims, dismissal was the necessary remedy. Metro Found. Contrs., Inc. v. Arch Ins. Co., 551 Fed. Appx. 607, 609-610 (2d Cir. N.Y. 2014) (dismissing plaintiff's claims due to spoliation of evidence).

In the instant matter, Plaintiffs bring claims for unlawful retention of tips, *inter alia*, pursuant to both the FLSA and NYLL. As part of their defense to such claims, Defendants assert that they maintained daily logs of tips dispersed to employees who worked at Chimichurri Grill, from 2008 through the end of Plaintiffs' employment. (See Declaration of Alicia Rodriguez ¶3). In fact, Defendant Rodriguez maintained, stored and locked these books in the wine room at the restaurant since she knew from restaurant association seminars that she was required to keep such records for six (6) years. (See Declaration of Alicia Rodriguez ¶4). However, from the outset of discovery, Defendants were only able to locate the tip books for 2010 and 2014. (See Declaration of Alicia Rodriguez ¶6).

During discovery, Plaintiffs produced copies of the tip books for 2008, 2009, 2011, 2012 and 2013, to Defendants utter surprise. (See Declaration of Alicia Rodriguez ¶7). Thereafter, on November 5, 2014, Defendants issued a demand that Plaintiffs immediately return Defendants' original tip books without delay. (See Declaration of Alicia Rodriguez ¶8). Shortly thereafter, Plaintiffs returned the tip books except the 2009 tip book. Id. Despite repeated demands for the return of the 2009 tip book, Plaintiffs assert that they are not in possession of the 2009 tip book. However, such an assertion is absurd since Plaintiffs already produced a copy of the 2009 tip book in their discovery responses. (See Declaration of Alicia Rodriguez ¶7). Plaintiffs must also be sanctioned for destroying the original 2009 tip book (or otherwise making the original unavailable).

The tip books are central to the issue of unlawful retention of tips since each page indicates which individuals received tips and in what amount on a daily basis. (See Declaration of Alicia Rodriguez ¶3). Throughout the books, there were certain days which indicated that "house" received tips. Id. During Plaintiffs depositions, they indicated that "house" tips went to the employer. However, the tip books many times indicated a person's initials next to the word "house" in order to decipher the individual who received those "house" tips (and not the employer). Id. Moreover, upon review of the original tip books after they were returned, Defendants observed many pages on which such initials had been erased. (See Declaration of Alicia Rodriguez ¶10; see also attached list of alterations made by Plaintiffs as Exhibit "A"). For example, on March 12, 2013, the tip books previously indicated the initials "CD" (Carlos Darquea). However, once the originals were returned, these initials were erased. (See Declaration of Alicia Rodriguez ¶10; see also sample alteration as Exhibit "B"). In addition, it appears that Plaintiffs added work hours to the tip books that were not previously there. (See Declaration of

Alicia Rodriguez ¶11; see also sample alteration as Exhibit "C"). Thus, the authenticity of any of the tip books is now questionable and Defendants are unable to utilize them in mounting a complete and comprehensive defense to Plaintiffs' claims at trial.

Defendants are extremely concerned that Plaintiffs will use these falsified books to bolster their claims. Such deceptive conduct by Plaintiffs would be substantially detrimental and prejudicial to Defendants. Accordingly, Defendants respectfully request that (1) the Court hold an in camera review of the original tip records in order to observe the extent of the Plaintiffs' spoliation efforts; and (2) sanction Plaintiffs by dismissing their claims; (3) sanction Plaintiffs by instructing the jury to draw a negative inference against Plaintiffs based on their conduct; and (4) grant such other relief as this Court deems just and proper.

Thank you for your attention to this matter.

                            Respectfully submitted,

                            **MILMAN LABUDA LAW GROUP PLLC**

                            /s/ Joseph M. Labuda, Esq.

cc:    Denise Schulman (via ECF)
        client (via e-mail)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
WILLIAM RAMONES, JAVIER PATRICIO,
MOLINA, and ABRAHAM CALLE,

        Plaintiffs,

    -against-

MDDCAR, CORP. d/b/a CHIMICHURRI
GRILL, ALICIA RODRIGUEZ, and
CARLOS DARQUEA,

        Defendants.
------------------------------------------------------------------x

Docket No.:
14-CV-2577 (PKC)

**DECLARATION**

Alicia Rodriguez declares the following under penalty of perjury:

1. I am a named Defendant and representative of the corporate Defendant in the above-referenced matter.

2. I am the owner of Chimichurri Grill.

3. Chimichurri Grill maintains daily logs of tips dispersed to its employees. Each page of the tip books indicate which individuals received tips and in what amount on a daily basis. Moreover, as indicated throughout the records, there were certain days which indicated that "house" received tips. The records further indicated the initials next to the word "house" in order to identify the person who receives those tips.

4. I maintained the tip books for all of the years at the restaurant and kept them locked in the wine room in the basement of the restaurant to which I had the key. I knew from restaurant association seminars that I was required to keep such records for six (6) years.

5. During this lawsuit, Plaintiffs served discovery requests, including requests for production of documents on or about July 7, 2014.

6. In order to respond to these requests, I reviewed the documents in my possession, custody or control. However, I was only able to locate the tip books for 2010 and 2014.

7. Due to the fact that I could not locate such books, I was shocked when my attorneys later forwarded me copies of documents that Plaintiffs produced during discovery which included copies of the tip books for 2008, 2009, 2011, 2012 and 2013.

8. Thereafter, on November 5 2014, my attorneys demanded the return of the tip books. All of these books were returned except the book for 2009.

9. During their depositions in this matter, Plaintiffs all testified that they did not steal these books, but conveniently found them in the garbage and took them home. This is absurd since the documents were returned in pristine condition without any garbage or food stains on them. As already stated, I kept these books under lock and key so that they would not be stolen, and knew not to throw them out since I was required by law to keep them for six (6) years.

10. Additionally, upon receipt of the original documents, I reviewed the tip logs. At that time, I observed many pages on which initials which were written next to the word "house" had been erased on several pages. (See attached list of alterations as Exhibit A and sample alteration as Exhibit B).

11. In addition, these tip books were used to record tips. Yet, when I received a copy of the tip books, I also noticed that Plaintiffs had added their alleged scheduled hours to the tip books that were not previously there. (See attached sample as Exhibit C).

12. Accordingly, I have reason to doubt the authenticity of these records.

Dated: New York, New York
February 6, 2015

ALICIA RODRIGUEZ

# EXHIBIT A

## 2009

Stolen book has not been returned,

it has not been examined to determine if it has been altered.

## 2010

It's the only book that was not stolen.

# 2011

Friday 1/21 initials erased

Saturday 1/22 initials erased

Friday 2/4 initials erased

Saturday 2/5 initials erased

Fiday 4/21 initials erased

Saturday 4/23 initials erased

Saturday 5/14 initials erased

Saturday 5/21 initials erased

Saturday 6/4 initials erased

Saturday 6/18 initials erased

Saturday 6/25 initials erased

Saturday 7/16 initials erased

Thursday 7/21 initials erased

Saturday 7/29 initials erased

Thursday 8/11 initials erased

Saturday 9/17 initials erased

Wednesday 9/21 initials erased

Saturday 9/24 initials erased

Fiday 9/30 initials erased

Saturday 10/1 initials erased

Monday 10/10 initials erased

Thursday 10/13 initials erased

Saturday 10/22 initials erased

Saturday 10/28 initials erased

Saturday 11/04 initials erased

Friday 11/11 initials erased

Friday 11/18 initials erased

Saturday 12/3 initials erased

Saturday 12/17 initials erased

Thursday 1/5 initials erased

Saturday 1/7 initials erased

Saturday 1/14 initials erased

Friday 1/27 initials erased

Thursday 1/5 initials erased

Friday 2/17  initials erased

Saturday 2/18 initials erased

Saturday 2/25 initials erased

Friday 3/23 initials erased

Saturday 3/24 initials erased

Saturday 3/31 name erased (carlos)

Friday 5/11 initials erased

Sunday 5/13 name  erased (scarlet)

Friday 5/25 initials erased

Saturday 5/26 initials erased

Friday 6/22 initials erased

Saturday 6/23 initials erased

Wednesday 6/27 initials erased

Thursday 6/28  payment notations erased on top and initials erased

Friday 6/20 initials erased

Saturday 6/30 initials erased

Thursday 7/12 initials erased

Saturday 7/14 initials erased

Wednesday 7/18initials erased

Friday 7/20 initials erased

Saturday 7/21 initials erased

Wednesday 7/25 initials erased

Thursday 7/26 initials erased

Saturday 7/28 initials erased

Thursday 8/2 initials erased

**2012 continued**

Wednesday 8/8 initials erased

Saturday 8/11 initials erased

Wednesday 8/15 initials erased

Friday 8/17 initials erased

Wednesday 8/22 initials erased

Thursday 8/23 initials erased

Saturday 8/25 initials erased

Thursday 9/6 initials erased

Saturday 9/8 initials erased

Thursday 10/25 initials erased

Saturday 10/27 initials erased

Saturday 11/10 initials erased

Friday 11/15 initials erased

Saturday 12/15 initials erased

Friday 1/12 initials erased

Saturday 1/13 initials erased

Friday 1/18  SD initials not erased

Saturday 1/19 SD initials not erased (pen)

Thursday 1/24 CD initials not erased (pen)

Saturday 1/26 SD initials not erased (pen)

Friday 2/1 SD initials not erased

Saturday 2/2 SD initials not erased (pen)

Thursday 2/13 initials erased

Friday 2/14 initials erased

Saturday 2/16 initials erased

Saturday 2/23 initials erased

Saturday 2/2 initials erased

Friday 3/8 initials erased

Saturday 3/9 initials erased

Tuesday 3/12 initials erased

Wednesday 3/13 initials NOT erased

Thursday 3/14 initials erased

Saturday 3/16 initials erased

Saturday 3/23 initials erased

Friday 4/5 initials erased

Saturday 4/6 initials erased  BUT scarlet payment NOT ERASED

Thursday 4/11 initials erased

Saturday 4/13 initials erased BUT scarlet payment NOT ERASED

Saturday 4/20 initials erased

Friday 4/26 initials erased

Saturday 4/27 initials erased

Saturday 5/4 initials erased

Saturday 5/11 initials erased

Tuesday 5/14 initials erased

Wednesday 5/15 initials NOT ERASED (pen)

Friday 5/24 initials erased

Saturday 5/25 initials NOT ERASED (pen)

Wednesday 5/29 initials NOT ERASED (pen)

Saturday 5/30 initials NOT ERASED (pen)

Friday 5/31 initials erased

Monday 6/3 Patricios name erased

Tuesday 6/4 Patricios name disguised on top

Wednesday 6/5 Patricios name written over house and initials erased

Thursday 6/6 Patricios named written over house and initials erased

Saturday 6/8 initials erased


6/26 to 12/31  looks like an attempt to have a time record

time keeping notations are added to all days

but not consistent for all employees or days


Saturday 11/30 initials erased but initial in pen not erased

Saturday 11/17 initials erased

Friday 11/8 initials erased

Saturday 10/19 initial not erased (pen)

Saturday 10/5 initials erased

Saturday 9/28 initials not erased (pen)

Saturday 9/21 initials erased

Thursday 12/12 initials erase

Friday 12/13 initials erased

# EXHIBIT B

**March 2013 — Tuesday 12** (71/294 Week 11)

- Lunch $ 20.00
- Whier $ 20.00
- Dinner $ 444.00
- RAFAEL'S 144.35
- W. BERG 144.35
- HOUSE 3500
- DEL 11.00
- PAID

**March 2013**

- $ .00
- $ .00
- 274.00 $
- 109.50 $
- 109.50 #
- 8.15 PAID

MARCH

*A little learning is a dangerous thing.*

# EXHIBIT C

**August 9, 2013 — Friday**

- Lunch $10 —
- Rafa $16 —
- Dinner $524.15
- Wilmer $128.55  5-12  (7)
- Willy $128.50  4-12 (8h)
- Papa $128.50  11-10 @ 10
- Patricio $128.50  4-12  (8)
- Dewy —

**August 10, 2013 — Saturday**

- Lunch $15.00
- Rafael $15.00
- Dinner $392.60
- Wilmer $94.40  5-15m  (8)
- Willy $94.40  3-11 (8h)
- Rafa $94.40  11-10 (10)
- Patricio $94.40  4-12  (8)

**August 11, 2013 — Sunday**

- Lunch $00
- Rafael $00
- Dinner $237.75 #
- Willy $118.85 #  → 3-11 (8h)
- Rafael $118.90 #   Dewy $00
- 11-10 (10)